JOSÉ RODRÍGUEZ RODRÍGUEZ, demandante y recurrente, *v.* GOBERNADOR DE PUERTO RICO, ETC., ET AL., demandados y recurridos.

*Número:* 603        *Resuelto:* 23 de octubre de 1964

*Guillermo S. Pierluisi,* abogado del recurrente; *J. B. Fernández Badillo, Procurador General, Jenaro Marchand, Procurador General Auxiliar, y Nilita Vientós Gastón, Procurador General Auxiliar,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

En octubre de 1956 el demandante recurrente fue retirado de su cargo de Teniente de la Policía Estatal, por incapacidad física para el trabajo. Se le pensionó bajo la Ley Núm. 447 de 1951. El 10 de marzo de 1958 interpuso esta demanda en el Tribunal Superior reclamando su derecho a pensión bajo la Ley Núm. 189 de 2 de mayo de 1951. La Sala de San Juan del Tribunal Superior le negó su reclamación.

En 7 de abril de 1940 el demandante se lesionó en el servicio de policía al patinarle la motocicleta. Sufrió "contusión fuerte en la cabeza . . . fractura lineal de la pared posterior del seno frontal, extendiéndose hacia arriba y hacia la izquierda del hueso frontal y terminando a la unión del tercio medio con el inferior de sutura fronto parietal." Se le dio de alta para trabajar en septiembre 27, 1940 por el Fondo del Seguro del Estado, con una incapacidad parcial permanente de pérdida de un 15% de las funciones fisiológicas generales.

En 29 de julio de 1940 tuvo otro accidente en el servicio en el cual sufrió "fractura conminuta tercio medio tibia derecha; fractura simple del os-calcis distal del mismo hueso; contusiones con edemas del tobillo derecho; contusiones sobre la rodilla izquierda." Fue dado de alta para trabajar por el Fondo en mayo 26, 1941 y la Comisión Industrial le deter-

minó una incapacidad parcial permanente consistente en la pérdida de un 25% de las funciones de la pierna derecha por debajo de la rodilla.

En 10 de noviembre de 1947 el demandante tuvo otro accidente en el servicio de policía al intervenir en una pelea y sufrió una contusión en el tobillo derecho. Se le dio de alta en agosto 3, 1948 y el Fondo le reconoció una incapacidad de un 25% de las funciones fisiológicas del pie derecho por el tobillo.

En 14 de junio de 1954 el demandante tuvo otro accidente en el servicio de policía mientras cumplimentaba una orden de arresto y se le diagnosticó una torcedura en el pie derecho. Se le dio de alta en agosto 17 de 1954. La Comisión Industrial le reconoció una incapacidad equivalente a la pérdida de un 50% de las funciones fisiológicas del pie derecho por el tobillo.

En 13 de mayo de 1956 el demandante sufrió un último accidente en el servicio antes de ser retirado del mismo. Sufrió lesiones en la región lumbar. Se le reconoció por el Fondo una incapacidad equivalente a la pérdida de 40% de las funciones fisiológicas generales, pero le otorgó compensación a base de sólo 20% alegando que el demandante se había negado a someterse a una intervención quirúrgica. Llevado el asunto ante la Comisión Industrial, surgió de la prueba médica que del examen hecho al demandante en septiembre 11, 1956 por el Dr. Ramírez de Arellano, existía un historial de una hernia de un disco lumbar; había atrofia de la pierna y muslo derechos, debilidad de movimientos en el tobillo derecho; debilidad de reflejos aquilianos; el demandante cojeaba de su pierna derecha aunque estaba en esas condiciones desde años antes debido a un accidente anterior; el nervio ciático derecho estaba muy sensible a la presión así como los procesos espinosos de las vértebras lumbares 3, 4 y 5. Se llegó a la conclusión que el demandante tenía un disco herniado en la región lumbar. El examen de rayos X demos-

traba estrechez del espacio L5 S1 en su parte posterior, los movimientos del paciente estaban bastante restringidos y apenas podía volverse de una posición a otra por causa del dolor. Lo anterior consta de procedimientos habidos en el Fondo del Seguro del Estado y ante la Comisión Industrial, admitidos en evidencia.

Después del accidente ocurrido en 13 de mayo de 1956 y de la lesión que sufriera en el mismo, el demandante fue definitivamente retirado del servicio por incapacidad física. La prueba no disputada en el récord demuestra que dicho accidente ocurrió mientras el recurrente daba cumplimiento a una orden de arresto expedida por el Juez de Paz de Cidra en esa misma fecha contra la persona de Fernando Rivera Martínez por acometimiento grave y daños maliciosos. El demandante iba en *"jeep"* oficial. Al encontrarse con el acusado se tiró. Aquél trató de impedir el arresto y forcejearon. Ahí sufrió la lesión en la región lumbar con las consecuencias físicas ya apuntadas.

Los demandados no presentaron prueba. En su contestacin a la demanda aceptaron la existencia de esos accidentes pero negaron que los mismos fueran "de la naturaleza que le den derecho [al demandante] al retiro bajo la Ley 189 de 1951." Más bien, un planteamiento de derecho. La Ley Núm. 189 de 2 de mayo de 1951 según quedó enmendada por la 94 de 23 de junio de 1956 aplicable en este caso, estatuía que las disposiciones de la misma serían aplicables a casos de incapacidad para el trabajo físico o muerte sobrevenida bajo las siguientes circunstancias:

"(a) En caso de un miembro de la Policía Insular, al evitar o tratar de evitar la comisión de un delito, o al *apresar* o tratar de *apresar* a alguien que se pueda presumir razonablemente que está conectado con la comisión de un delito."

La Sala sentenciadora al fallar el pleito se manifestó así:

"Tenemos reservas de que ese segundo accidente(*) ocurriera como lo expresa el demandante. Pero aún si así fuera, a nuestro juicio, no cae dentro 'de la naturaleza de los que contempla la ley.' La ley no habla de arrestar o tratar de arrestar. La ley usa la palabra 'apresar'. Con ello el Legislador, a nuestro juicio, intentó únicamente incluir aquellos accidentes que le ocurrían a un policía cuando sin tener una orden de arresto legalmente expedida por un Juez luego de éste haber determinado causa probable, el policía tratase de apresar a alguien por un delito público cometido, o que se ha intentado cometer en su presencia; o cuando la persona que el policía intenta apresar ha cometido un delito grave, aunque no haya sido en presencia del policía; o, finalmente, cuando en realidad se ha cometido un delito grave y el policía tiene motivos racionales para creer que la persona que va a apresar lo ha cometido. Los dos casos que nos ofrece el demandante, ocurrídosles después de aprobarse la Ley 189 son dos casos de arrestos por virtud de orden de arresto de un magistrado. Ambos son por delitos menos graves y en uno de ellos nada tuvo que ver el arresto en forma directa con el accidente ya que éste fue causado por haber resbalado el demandante en una zanja abierta por las corrientes de las lluvias y el otro no ha puesto al Tribunal, por la naturaleza de su descripción por parte del demandante, en condición de poderlo situar dentro del propósito contemplado por el Legislador al aprobar la Ley 189. La idea que el Legislador tuvo hay que buscarla en la semántica de la palabra 'apresar' que utilizó. Apresar tiene la connotación de asir o agarrar una persona algo que ejerce violencia contraria al propósito de una mera orden de arresto. Es cierto que una persona arrestada puede ofrecer resistencia al Oficial de Policía de tal naturaleza que puede causar hasta la muerte, pero en este caso la prueba del demandante no establece esa situación que es la extrema posibilidad en un caso de arresto a virtud de orden de arresto expedida por el Magistrado luego de encontrar causa probable."

Por las anteriores consideraciones de derecho la Sala sentenciadora desestimó la acción. Ante nos, el Procurador General ha aceptado en su escrito de oposición y en su

(*) Se refiere al accidente ocurrido el 13 de mayo de 1956 en el arresto del ciudadano Fernando Rivera Martínez.

alegato que lo anterior es una interpretación errónea de la ley. Dice el Procurador:

"Estamos de acuerdo con el recurrente de que es errónea la interpretación dada por el Juez a quo al vocablo 'apresar' según usado en la Ley 189. Hemos llegado a la anterior conclusión después de estudiar la declaración de propósitos de la mencionada Ley y lo resuelto por este Tribunal en el caso de *López* v. *Muñoz*, 81 D.P.R. 337."

▮ Convenimos con el criterio del Procurador General. Se observa que en la versión en inglés de la Ley Núm. 189 de 1951 y de la 94 de 1956 según publicadas oficialmente, en ambas ocasiones se usa arrestar al traducirse apresar: *"while arresting or trying to arrest a person."* Quizás ésta no sea la traducción más fiel. Pero aparte de ello, el término "apresar" según se usa en la Ley Núm. 189 resulta ser afín e intercambiable con el vocablo arrestar. En el concepto legal del arresto existe el ingrediente de aprehensión de un individuo y de restricción de su libertad que hay envuelto en el de apresar. De acuerdo con el Código, y ahora las Reglas de Procedimiento Criminal, un arresto se hace por medio de la restricción efectiva de la libertad de la persona o sometiendo a dicha persona a la custodia de un funcionario. Es de observar también que en el Procedimiento Criminal se usa el término "arrestar" indistintamente cuando se trata de un arresto o restricción efectiva de la libertad de la persona en cumplimiento de una previa orden de arresto expedida por un magistrado, como cuando se trata de igual restricción de la libertad sin orden previa. (¹)

---

(¹) En el *Diccionario de Derecho Usual* de Cabanellas, 1953, "arresto" se define como acto de *prender* a una persona y privarla del uso de su libertad. *Vox* da "arrestar" como sinónimo de *detener* y detener, impedir que pase adelante. Casares en su *Diccionario Ideológico* da "arrestar" como detener, poner preso, y "apresar", asir, aprisionar. Y Ruiz Cárdenas, en su *Nuevo Diccionario de Sinónimos y Palabras Afines*, 1956, dice: "Apresar": asir, aprehender, . . . *arrestar* . . ., "arrestar": detener, prender. En la versión inglesa, Webster, *3rd International Dict.*, 1961,

La semántica a un lado, la ley es la expresión de un propósito o fin deseado y querido. A la luz de los fines y propósitos de la Ley Núm. 189 no puede pensarse que el Legislador deseó dar la protección adicional de dicho estatuto en aquellos casos en que el funcionario actúa sin una previa orden de arresto, en que puede haber equivocación o error de apreciación y en que tiene más libertad de soslayar un encuentro o de posponerlo, y no deseó dar esa protección adicional en los casos en que el funcionario actúa en cumplimiento de una orden judicial en que no tiene otra alternativa que la de seguir adelante afrontando todas las circunstancias, aunque sea en peligro de perder la vida y aunque la pierda. Nos parece claro que no pudo ser ése el pensamiento legislativo. El texto claro de la ley es la expresión por excelencia de la intención legislativa y la Ley Núm. 189 no intercaló ese ingrediente de distinción entre un arresto efectuado previa orden al efecto, y otro sin orden.

En *López* v. *Muñoz, Gobernador*, 81 D.P.R. 337 (1959), el funcionario sufrió lesiones al caerse mientras perseguía a un individuo que trató de apresar y se dio a la fuga. El Tribunal Superior negó el derecho a pensión de la Ley Núm. 189 bajo el criterio de que la misma no se aplicaba a ese tipo de accidentes y cubría sólo aquellos daños causados como resultado *directo, violento y extraordinario* del acto de apresar a un delincuente y de tratar de evitar la comisión de un delito. Haciendo valer los propósitos de la Ley este Tribunal rechazó ese ingrediente intercalado en la ley por el Tribunal Superior y sostuvo el derecho del funcionario a la pensión bajo la Ley Núm. 189. (²)

---

define *"arrest"*: *"to catch or take hold of; seize, capture; to take or keep in custody by authority of law"*. *"Apprehend"* [apresar]: *"to take possession of: take hold of: arrest, seize."*

(²) El caso de *López* se resolvió en 1959. Se aplicó la Ley Núm. 189, como se aplica en este caso, antes de ser revocada y sustituida por la Ley Núm. 127 efectiva el 1ro. de julio de 1958.

Aunque reconoce que la interpretación de la ley no fue correcta, el Procurador General insiste en que el demandante no tiene derecho a lo que reclama. Está admitida la existencia de un accidente el 13 de mayo de 1956 y está admitido que al demandante se le retiró del servicio meses después por incapacidad física para el trabajo. En la vista ante la Sala de instancia en este caso declaró el Dr. Hiram Vázquez Milán. Manifestó que había intervenido directamente en los últimos tres accidentes del demandante. Ratificó que el último accidente fue el que causó la hernia del disco de la columna vertebral y que el mismo agravó la condición física general que ya él sufría por accidentes anteriores. Esta última lesión, dijo, produjo el climax de su incapacidad para desempeñar sus funciones de policía. Pudiera ser que el forcejeo habido en este caso no fuera tan intenso como para causar una lesión así en las circunstancias de una persona enteramente saludable, sin las incapacidades ya sufridas por el recurrente. Sin embargo, en *López* v. *Muñoz, Gobernador,* 80 D.P.R. 4, decidido en 1957, nos manifestamos así: [pág. 14]

"El tribunal sentenciador determinó que bajo los hechos que la Junta de Retiro halló probados, los accidentes de 1943 y de 1949 no caían dentro de las disposiciones de la Ley núm. 189 como cuestión de derecho. Creemos conveniente indicar que la Ley núm. 189 no contiene lenguaje alguno indicativo de que la misma tendría efecto retroactivo. Por consiguiente, no puede concederse pensión alguna por aquellos accidentes como tales, ya que ocurrieron antes de la aprobación de la Ley núm. 189 en 1951. Véase *Atiles, Admor.* v. *Comisión Industrial,* 77 D.P.R. 511. Sin embargo, no aprobamos el siguiente lenguaje del tribunal sentenciador: 'Además, como muy bien dice la parte demandada, la incapacidad otorgádale al demandante en virtud de este último accidente fue únicamente de un diez por ciento de las funciones fisiológicas de la rodilla izquierda, que de por sí no hubiera incapacitado totalmente al demandante para trabajo físico.' *Por el contrario, la Ley núm. 189 no requiere prueba de que el accidente más reciente por sí solo fue la causa de la*

*incapacidad contemplada por la Ley núm. 189. Sería suficiente si dicho último accidente—si bien únicamente agravó una incapacidad parcial ya existente—resultara en incapacidad total para el trabajo físico, siempre que el accidente caiga dentro de los términos de la Ley núm. 189.*" [citas] (Bastardillas nuestras.)

El récord de este caso demuestra que la lesión de 1956 por sí sola o ya tomada en relación con las lesiones anteriores, causó la incapacidad total del demandante para el trabajo.

A virtud del derecho aplicable como se ha expuesto, la reclamación del demandante era procedente.

*Se revocará la sentencia de la Sala de San Juan del Tribunal Superior que desestimó la demanda y se dictará otra declarando con lugar la misma.*