MIGUEL BERRIOS Y OTROS
Querellantes-Recurridos

v.

EMERITO ESTRADA RIVERA, INC. Y OTROS
Querellados-Recurrentes

Núm. KLRA-96-00290

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su Presidente, Juez Sánchez Martínez
y los Jueces Broco Oliveras y Urgell Cuebas

*Per Curiam*

### TEXTO COMPLETO DE LA SENTENCIA

La controversia en este caso es si, a tenor con el Art. 28.1 del Reglamento de Garantías de Vehículos de Motor, promulgado por el Departamento de Asuntos del Consumidor, el vendedor de un automóvil usado está obligado a notificarle por escrito al comprador del mismo que dicho automóvil estuvo previamente en posesión de una empresa autorizada a dedicarse al negocio de alquiler de vehículos de motor. Dicho artículo dispone que *"[t]odo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa, ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve un uso irregular o excesivo"*. ■ El DACO resolvió que sí y nosotros estamos

22

de acuerdo.

# I

El 9 de julio de 1994 los esposos Miguel Berríos y Carmen Colón adquirieron de Emérito Estrada Rivera, Inc. un vehículo de motor usado Isuzu Trooper del 90 por diez mil dólares. ■ Los esposos Berríos Colón dieron $2,500 de pronto y financiaron la diferencia de $7,500 con el Citibank, N.A. La Trooper tenía un millaje recorrido de aproximadamente 48,000 millas por lo que había expirado la garantía por 2,000 millas o dos meses de uso lo que ocurriera primero. Art. 24.1(b) del Reglamento de Garantías de Vehículos de Motor, según enmendado.

La Trooper comenzó a darle problemas inmediatamente. Por tal razón, los esposos Berríos Colón le reclamaron por escrito a Emérito Estrada Rivera, Inc. Paralelamente, antes de transcurrido el primer mes desde que compraron el vehículo, ellos presentaron ante el DACO una querella contra Emérito Estrada Rivera, Inc. y Citibank, N.A. La querellada Emérito Estrada Rivera, Inc. hizo algunas reparaciones, a tenor con la garantía, pero se negó a hacer otras. Así las cosas, el caso fue a vista administrativa ante el DACO.

Durante la vista, los esposos Berríos Colón presentaron como prueba una licencia de la Trooper donde aparece como anterior dueño del vehículo la empresa Boricua Motor Leasing. Esto trabó la controversia inicial de si la Trooper había sido un vehículo de alquiler o de uso irregular o excesivo.

Por la querellada Emérito Estrada Rivera, Inc. testificó el gerente de garantía, señor Héctor Vázquez, quien explicó que Boricua Motor Leasing era una compañía que se dedicaba a financiar vehículos de motor. Declaró que *"[r]ealmente, pues, no es una compañía como diríamos Avis o cualquier otra compañía de alquiler de autos"* (T.E., a las págs. 33-34). *"El vehículo no es un vehículo de alquiler como tal; es un vehículo que compra una persona o un individuo y la compañía que lo financia es Boricua Leasing [sic]. Finalmente, este cliente, pues, tiene la oportunidad de entregar este vehículo y coger otro."* (T.E., a la pág. 34). Vázquez indicó que basándose en el millaje que tenía la Trooper al momento de la compraventa, dicho vehículo tenía un uso completamente normal. *Id.*

La querellante señora Colón declaró, por su parte, que cuando ella compró la Trooper no sabía que había estado en contrato de **leasing,** pues de haberlo sabido habría sido el último vehículo que ella hubiera mirado (T.E., a la pág. 43).

Originalmente, el DACO descartó el fundamento del vicio en el consentimiento por la falta de notificación de que la Trooper había sido un vehículo de alquiler. En dicha resolución el DACO simplemente condenó a la empresa querellada Emérito Estrada Rivera, Inc. a pagarle a los esposos Berríos Colón $729 en concepto de reembolso de ciertos gastos incurridos por éstos en las reparaciones que la vendedora no pudo o no quiso hacer. Desestimó la querella en cuanto al Citibank por no haberse hecho la notificación requerida por ley dentro de los veinte días siguientes a la compraventa del vehículo. ■

No obstante, en virtud de una moción de reconsideración, el DACO dejó sin efecto dicha resolución y, en su lugar, dictó otra declarando la nulidad del contrato de compraventa. A base de una certificación de la Comisión de Servicio Público en que consta que Boricua Motor Leasing estaba autorizada a dedicarse al negocio de alquiler de vehículos de motor bajo la franquicia número VA-1289 (sometida por los esposos Berríos Colón con su moción de reconsideración), el DACO estimó que la empresa querellada Emérito Estrada Rivera, Inc. incumplió su obligación de notificarle a los compradores el hecho de que la Trooper había sido utilizada como vehículo de alquiler.

El DACO sostuvo igualmente que tal omisión fue dolosa y eso invalidó el consentimiento brindado por los esposos Berríos Colón en la compraventa, según lo dispuesto por el Art. 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3404 *("Será nulo el consentimiento prestado por error, violencia, intimidación o dolo")*. El DACO declaró nulo el contrato y ordenó a las partes a reintegrarse sus respectivas prestaciones. Por ende, condenó a Emérito Estrada Rivera, Inc. a devolverle a los esposos Berríos Colón los $2,500 que ellos dieron de pronto y a Citibank todos los pagos que le hubiesen abonado bajo el contrato de venta condicional otorgado entre las partes. También condenó a Emérito

Estrada Rivera, Inc. y al Citibank a pagarle solidariamente a los esposos Berríos Colón $3,896 por los gastos de las reparaciones que éstos realizaron a la Trooper. Solamente Emérito Estrada Rivera, Inc. recurrió ante nos.

En su recurso de revisión, Emérito Estrada Rivera, Inc. se queja de (1) que el DACO le hubiese impuesto el pago de $3,896 en lugar de los $729 originalmente impuestos y (2) que hubiese declarado la resolución del contrato, a base de lo dispuesto en los Artículos 28.1 del Reglamento de Garantías de Vehículos de Motor y 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. j3404.

Atenderemos, en primer lugar, el planteamiento relativo a la aplicación del Art. 28.1 del Reglamento de Garantías de Vehículos de Motor. En virtud de dicho artículo el vendedor de un automóvil usado está obligado a notificarle por escrito al comprador si el vehículo que interesa ha sido usado *"como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve un uso irregular o excesivo", supra.* La controversia a dilucidar es, pues, si el DACO cometió error manifiesto al interpretar que la frase *"vehículo de... alquiler... o [usado para] cualquier otra finalidad que conlleve un uso irregular o excesivo"* incluye a los vehículos usados que hayan pertenecido a una empresa autorizada a dedicarse al negocio de alquiler de vehículos de motor.

El Reglamento de Garantías de Vehículos de Motor fue promulgado con el propósito de *"proteger adecuadamente a los consumidores en Puerto Rico y sus inversiones en la adquisición de vehículos de motor. Así también, asegurarle a todo consumidor que adquiera un vehículo de motor en Puerto Rico, que el mismo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad. Además, tiene como finalidad prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico".* Art. 2 del Reglamento de Garantías de Vehículos de Motor, *supra*. Del mismo modo *"[e]ste Reglamento deberá interpretarse liberalmente a favor del consumidor".* Art. 4 del Reglamento de Garantías de Vehículos de Motor, *supra*.

La tesis de la querellada Emérito Estrada Rivera, Inc. es que el automóvil vendido a los esposos Berríos Colón no había sido utilizado como vehículo de alquiler porque la empresa a la que pertenecía (Boricua Motors Leasing) se dedicaba únicamente al negocio de arrendamientos financieros o leasing. Sostiene que este tipo de contrato de leasing es sólo un mecanismo de financiamiento de vehículos de motor. Aduce que no se trata propiamente de un vehículo de alquiler como serían los vehículos de ciertas empresas que alquilan sus vehículos por períodos cortos de tiempo y los cuales no son cuidados por los arrendatarios como si fueran de su propiedad. La querellada señala que el hecho de que bajo el contrato de arrendamiento financiero o leasing el poseedor del vehículo tenga la opción de hacerlo suyo al finalizar el contrato lo deja fuera del concepto de vehículo de alquiler. Este argumento no nos persuade.

No es correcto presumir que sólo las personas que alquilan un vehículo a corto plazo no lo cuidan como si fuera suyo. No todas las personas que adquieren el uso de un vehículo bajo un contrato de arrendamiento financiero o **leasing** cuidan el vehículo como si fuera de su propiedad. Aun cuando adquirirlos para sí al vencimiento del contrato es una opción que tiene tal arrendatario, la realidad es que no deja de ser eso, una opción, pues no existe una obligación de adquirirlos. Además, al ejercer la opción el arrendatario tiene que pagar un precio por el valor residual del vehículo, el cual puede ser en ocasiones el valor en el mercado, dependiendo de las condiciones en que se encuentre y haya sido cuidado el vehículo.

Y no es menester elaborar demasiado para entender que *"cuidar"* un vehículo no tiene el mismo significado para el arrendatario que tiene la intención de hacerlo suyo al finalizar el contrato, que para aquél que sabe de antemano que optará por entregar el usado y tomar otro nuevo. El recurrente Emérito Estrada Rivera, Inc. pretende demostrar que la Trooper en cuestión recibió un uso *"normal"* a base de que en cuatro años de uso sólo recorrió 48,000 millas. Pero la aplicación del Reglamento de Garantías de Vehículos de Motor no puede depender del factor millaje pues el mismo no siempre es indicativo de un uso regular o normal. El cuido de un automóvil se refleja, más que en el millaje recorrido, en el mantenimiento óptimo de sus condiciones mecánicas y su apariencia (e.g), lubricación y cambios de fluidos y filtros siguiendo el itinerario del fabricante, rotación de neumáticos,

alineamiento del tren delantero, mantenimiento al sistema de enfriamiento y de frenos, ajustes a correas y, también importante, mantenimiento de la carrocería y pintura exterior. No es, pues, tan sencillo decir que los poseedores de un automóvil bajo un contrato de arrendamiento financiero o **leasing** a largo plazo cuidan el vehículo mejor de lo que lo cuidan los arrendadores a corto plazo o como si fuera de su propiedad.

Con toda esta argumentación, la recurrente Emérito Estrada Rivera, Inc. no pretende otra cosa que hacer una distinción entre un vehículo de alquiler de uno sometido a un contrato de arrendamiento financiero o leasing; en otras palabras, distinguir lo que el reglamento no distingue. Lo cierto es que el Art. 28.1 del Reglamento de Garantías de Vehículos de Motor se refiere a vehículos de alquiler y no exime de su aplicación a los vehículos dados en alquiler por cánones mensuales equivalentes a la amortización de su costo, con la opción de que los arrendatarios puedan adquirirlos (de las compañías de leasing) al vencerse el contrato. Tales vehículos de motor, cuyos verdaderos titulares son estas compañías de leasing, no dejan de ser vehículos alquilados sólo porque estén sometidos a un contrato de arrendamiento financiero o leasing. Repetimos que donde los estatutos o reglamentos no distinguen los tribunales, no debemos distinguir. Cf., *Brewer P.R. Inc. v. Tribunal Superior*, 93 D.P.R. 242, 243-44 (1966); *Rodríguez Rodríguez v. Gobernador,* 91 D.P.R. 101, 106-07 (1964).

Además, es un principio básico de derecho administrativo que la interpretación de un estatuto, por el organismo facultado por ley para velar por su administración y cumplimiento, merece gran respeto y deferencia judicial si son razonables y consecuentes con su propósito legislativo. *Maisonet Felicié v. Corp. F.S.E.,* ___ D.P.R. ___ (1996), **96 J.T.S. 169**, a la pág. 454; *Mangual Vélez v. C.E.E.,* ___ D.P.R. ___ (1995), **95 J.T.S. 121**, a la pág. 66; Srio. *D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807, 819 (1988); *A.R.P.E. v. Ozores Pérez,* 116 D.P.R. 816 (1986); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183, 188-189 (1984); *Tormos & D.A.C.O. v. F.R. Technology,* 116 D.P.R. 153, 160 (1985); *Rubin Ramírez v. Trías Monge,* 111 D.P.R. 481, 484-485 (1981). Este principio es particularmente cierto cuando lo que la agencia interpreta es un reglamento promulgado por ella misma para implantar una ley. *Monllor & Boscio v. Comisión Industrial,* 89 D.P.R. 397, 405 et seq. (1963). La interpretación adoptada por la agencia administrativa no tiene que ser la única interpretación razonable. *Vázquez v. ARPE,* ___ D.P.R. ___ (1991), **91 J.T.S. 53**, a la pág. 8657; *De Jesús v. Depto. Servicios Sociales,* 123 D.P.R. 407, 418 (1989). Sólo cuando sea manifiestamente errónea es que el foro judicial está autorizado a descartarla. *Rodríguez v. Comisión Industrial,* 99 D.P.R. 368, 376 (1970).

De otro lado, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175, nos obliga a sostener las determinaciones de hechos de las agencias administrativas *"si se basan en evidencia sustancial que obra en el expediente administrativo"*. Véanse, además, *Maisonet Felicié v. Corp. F.S.E., supra*; *Vázquez v. ARPE,* 128 D.P.R. ___ (1991), **91 J.T.S. 53**; *Asoc. Médica de P.R. v. Cruz Azul,* 118 D.P.R. 669, 678 (1987). En el caso de autos tanto la licencia de la Trooper a nombre de Boricua Motors Leasing como la certificación de la Comisión de Servicio Público autorizando a dicha empresa a dedicarse al negocio de alquiler de vehículos de motor, constituyen evidencia sustancial de que, a los fines del Art. 28.1 del Reglamento de Garantías de Vehículos de Motor, la Trooper fue un vehículo de alquiler. No se cometió, pues, el error señalado.

Mediante el otro señalamiento Emérito Estrada Rivera, Inc. aduce que el DACO cometió error al imponerle el pago de $3,896 a los esposos Berríos Colón, en lugar de los $729 originalmente impuestos. La realidad es que la cifra de $729 que el DACO concedió en su primera decisión no fue escrita sobre piedra. El DACO tenía facultad para reconsiderar su dictamen y ajustarlo a la evidencia sustancial que apareciera de los autos. Si bien es cierto que la suma de $729 corresponde a los gastos incurridos por los esposos Berríos Colón en reparar los defectos mecánicos reclamados dentro del período de la garantía y aquellos gastos incurridos en arreglar el problema del sobrecalentamiento del motor que la querellada se había comprometido a reembolsar durante una vista preliminar celebrada el 14 de noviembre de 1994, también es cierto que la suma de $3,896 incluye facturas de reparaciones incurridas por los esposos Berríos Colón con posterioridad al período de garantía. Habiéndose declarado la nulidad del contrato de compraventa entre las partes por dolo grave, la querellada Emérito Estrada Rivera, Inc. viene obligada a resarcir todos los daños que esa contratación le hubiese irrogado a los esposos Berríos Colón. El gasto en las reparaciones de la Trooper es la medida de una parte de los daños; la parte que el DACO ordenó compensar.

## III

Con estos antecedentes, habiéndose ya expedido el auto, se confirma la decisión administrativa recurrida.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 98

**1.** El Art. 27.1 que citan la agencia y las partes en sus escritos corresponde al actual Art. 28.1, que es como lo citaremos en adelante. Lo que ocurrió es que el Reglamento de Garantías de Vehículos de Motor fue enmendado dos veces en 1996 y como resultado de las enmiendas los anteriores artículos 23 y siguientes fueron reenumerados.

**2.** Emérito Estrada Rivera, Inc. ha comparecido ante nosotros como Emérito Estrada Rivera-Isuzu de P.R., Inc.

**3.** De conformidad con el Art. 209 de la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 749, el comprador tiene la obligación de notificar al cesionario de un contrato de venta condicional cualquier hecho que pudiera dar lugar a una reclamación o defensa contra el vendedor dentro de los veinte días siguientes a la fecha en que tenga conocimiento de tal hecho.