Pabón Chameco, Jueza Ponente
*918 TEXTO COMPLETO DE LA RESOLUCION
Comparece ante nos, Auto Outlet Sales & Services, en adelante, Auto Outlet, solicitando la revisión de una Resolución en reconsideración emitida por el Departamento de Asuntos del Consumidor, en adelante, D.A.C.O. Mediante dicho dictamen, D.A.C.O. decretó la resolución del contrato entre las partes.
Por las razones que expondremos a continuación, se deniega la expedición del auto solicitado.
I
Según surge de las determinaciones de hechos del D.A.C.O., el 18 de septiembre de 1999, Carlos Guzmán Mercado y María S. Ocasio Carmona, en adelante, los querellantes, visitaron Auto Outlet con el propósito de adquirir un vehículo usado, siendo atendidos por el Sr. Miguel Juan Rodríguez, vendedor de dicha empresa. Los querellantes se interesaron en un vehículo de motor Mitsubishi Mirage ES, del año 1996, tablilla CBK-772, el cual tenía el acondicionador de aire defectuoso, así como las gomas bastantes desgastadas. Auto Outlet, a través de su gerente, accedió a reparar únicamente la unidad de aire acondicionado, de ser el vehículo comprado.
Los querellantes adquirieron dicho vehículo de motor, mediante compraventa, siéndole entregado un permiso provisional de licencia. El precio de venta acordado fue de $9,995.00. Surge de la orden de compraventa que los querellantes dieron $2,095.00 de contado en calidad de pronto pago, financiando el remanente con el Banco Bilbao Vizcaya, quien advino cesionario del contrato de financiamiento. Dicho contrato de financiamiento estableció un primer pago de $337.02 y cuarenta y siete (47) pagos de $277.02. Como parte del acuerdo, los querellantes dieron a Auto Outlet un vehículo marca Mazda en "trade-in" -por el cual nunca le dijeron en cuanto lo tomaban-, y $200.00 con el propósito de bajar las mensualidades. Al momento de la compraventa, los querellantes renunciaron a la garantía través de un documento, del cual no le entregaron copia.
Así las cosas, dentro de la semana subsiguiente y conforme se había acordado, los querellantes llevaron el vehículo a reparar la unidad de aire acondicionado. En dicha fecha no le entregaron factura del servicio ofrecido. El 2 de octubre de 1999, los querellantes tuvieron que llevar el vehículo a Western Auto, incurriendo en $214.68 por una-reparación. El 13 de diciembre de 1999, Auto Outlet le otorgó a los querellantes un segundo permiso provisional de licencia. El 6 de marzo de 2000, los querellantes tuvieron que llevar el vehículo a Western Auto a fin de comprarle una batería la cual les costó $57.87.
El 13 de abril de 2000, Auto Outlet le otorgó a los querellantes un tercer permiso provisional de licencia. Durante dicho mes, los querellantes advinieron en conocimiento de parte del Departamento de Transportación y Obras Públicas, en adelante, D.T.O.P., que el vehículo comprado había sido objeto de un arrendamiento financiero o "leasing".
El 10 de mayo de 2000, los querellantes presentaron acción ante el D.A.C.O. por dolo, alegando que, al momento de la compraventa, no les fue notificado que el vehículo había sido objeto de arrendamiento.
El 25 de agosto de 2000, los querellantes tuvieron que comprar unos "pads" de frenos y un "kit" de frenos *919 por la suma de $42.00 ($18.00 por los "pads" + $24.00 por el "kit").
El 21 de septiembre de 2000, los querellantes enmendaron la querella a fin de solicitar se le reembolsaran los gastos incurridos por concepto de inspección y compra de marbete, neumáticos, frenos y batería. El 23 de septiembre de 2000, los querellantes tuvieron que llevar el vehículo a Varela Esso Servicenter para una inspección y alineamiento, facturándosele $31.00.
El 10 de noviembre de 2000, se celebró la vista administrativa. Al momento de la vista, los querellantes poseían y utilizaban el vehículo; habían recibido la licencia oficial; el vehículo tenía la unidad de aire acondicionada dañada y tenían que echarle aceite cada dos (2) semanas al mismo.
El 2 de febrero de 2001, notificada el 7 de febrero de 2001, D.A.C.O. emitió su Resolución. Mediante dicho dictamen, la agencia decretó la resolución del contrato, ordenando a los querellados a reembolsar solidariamente a los querellantes el pronto pago y las mensualidades pagadas, así como los relevaran de la deuda por concepto del financiamiento del vehículo. Asimismo, le ordenó a Auto Outlet a reembolsar a los querellantes la suma de $345.55 correspondiente a los gastos de reparación incurridos por éstos.
Surge del recurso que, de dicho dictamen, Banco Bilbao Vizcaya y Auto Outlet presentaron mociones de reconsideración por separado, de fechas de 20 de febrero de 2001 y de 7 de febrero de 2001, respectivamente, las cuales fueron acogidas el 8 de marzo de 2001 por la agencia. Asimismo, los querellantes presentaron escrito ante el foro administrativo. 
El 30 de abril de 2001, notificada en igual fecha, D.A.C.O. emitió una Resolución en Reconsideración, denegando la reconsideración.
Inconforme con dicho dictamen, Auto Outlet recurre ante nos el 30 de mayo de 2001.
II
En su recurso, Auto Outlet alega que incidió el D.A.C.O. al concluir que los términos "arrendamiento financiero" y "alquiler" son equivalentes, determinando que el vehículo fue destinado para uso de alquiler; al concluir que Auto Outlet incurrió en acción dolosa; al hacer conclusiones de hechos y de derecho basadas en evidencia que no fue presentada en la querella; al decretar la nulidad del contrato de compraventa suscrito entre las partes; y al decretar el reembolso de $345.00 por parte de Auto Outlet por concepto de reparaciones al vehículo habiendo los querellantes renunciado a la garantía.
III
Conforme a nuestro ordenamiento jurídico, la existencia de un contrato se configura cuando concurren los siguientes elementos: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3391; Master Concrete Corp. v. Fraya, 152 D.P.R._(2000), 2000 J.T.S. 192; José Garriga Hijo, Inc. v. Cond. Marbella del Caribe Oeste, 143 D.P.R. 927 (1997); Quiñones López v. Manzano Posas, 141 D.P.R. 139 (1996).
El consentimiento se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Art. 1214 del Código Civil de Puerto rico, 31 L.P.R.A. see. 3401; Vilá & Hnos., Inc. v. Owens Ill. De P.R., 117 D.P.R. 825, 834-835 (1986); Produc. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
El consentimiento prestado puede ser nulo cuando el mismo se ha producido por error, violencia, intimidación o dolo. Art. 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3404; Colón Rivera v. Promo Motor Imports, 144 D.P.R. _ (1997), 97 J.T.S. 153.
Existe dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido *920 el otro a celebrar un contrato, que sin ellas, no hubiera hecho. Art. 1221 del Código Civil de Puerto Rico, 31 L. P.R.A. see. 3408. Es decir, el dolo puede cometerse mediante palabras o maquinaciones insidiosas o bien callando respecto a una condición esencial del contrato. Márquez v. Torres, 111 D.P.R. 854; Márquez v. Torres Campos, 111 D.P.R. 854, 871 (1982). Véanse, además, Colón Rivera v. Promo Motor Imports, Inc., supra; Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583, 617 (1982); Canales v. Pan American, 112 D.P.R. 329, 338-342 (1982); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980).
El dolo puede manifestarse en la contratación o en el curso de la consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. Colón Rivera v. Promo Motor Transports, Inc., supra; Márquez v. Torres Campos, supra.
Contrario a lo intimado en el texto del Art. 1217, supra, no todo tipo de dolo produce la nulidad del contrato. Para que produzca la nulidad del contrato, el dolo tiene que ser grave y no meramente incidental, y no haber sido utilizado por ambas partes. Art. 1222 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3409. El tipo de dolo con características de gravedad se ha denominado como el dolo causante. Rivera v. Sucn. Díaz Luzunaris, 70 D.P.R. 181, 185 (1949). Es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que sin él no se hubiera otorgado el mismo. Colón Rivera v. Promo Motor Imports, Inc.
Por otro lado, el dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. Art. 1222, supra; Id. Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. Id.
El dolo, según se conoce, no se presume, sino que tiene que ser establecido por la parte que alega su existencia. Id. Véase, Canales v. Pan American, supra.
Ahora bien, como cualquier otro elemento mental, el mismo no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso particular. El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que debe considerarse la preparación académica de las partes, así como su condición social y económica y las relaciones y el tipo de negocio en que se ocupan. El dolo puede surgir del conjunto y evolución de circunstancias y manejos engañosos, más que de un sólo hecho incidental. Colón Rivera v. Promo Motor Imports, Inc.; Acosta & Rodas, Inc. v. PRAICO, supra; Miranda Soto v. Mena Eró, supra.
IV
La Ley Núm. 7 de 24 de septiembre de 1979, conocida como "Ley de Garantías de Vehículos de Motor", 10 L.P.R.A. see. 2051 et seq., se aprobó con el propósito de "velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor". Art. 3, 10 L.P.R.A. sec. 2053. El Art. 13 de dicha ley faculta al D.A.C.O. a adoptar reglamentos para implantar sus propósitos. 10 L.P. R.A. see. 2063.
A tales efectos, el Reglamento de Garantías de Vehículos de Motor del D.A.C.O., Reglamento Núm. 4797 promulgado al amparo de la Ley Núm. 7, supra, tiene el propósito de "proteger adecuadamente a los consumidores en Puerto Rico y sus inversiones en la adquisición de vehículos de motor. Así mismo, asegurarle a todo consumidor que adquiera un vehículo de motor en Puerto Rico, que el mismo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad. Además tiene como finalidad prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico". Art. 2 del Reglamento déuarantías de Vehículos de Motor, supra.
Del mismo modo, su Art. 4 dispone que "[e]ste Reglamento deberá interpretarse liberalmente a favor del consumidor". (Enfasis suplido).
*921 V
En contabilidad, un "lease" se define como:
"A contract specifying the terms under which the owner of property, the lessor, transfers the right to use a property to a lessee. Leasing is widely used in our economy as a method of obtaining various kinds of assets." Smith and Skouse, Intermediate Accounting, lOma. ed., Cincinnati, Ohio, South-Western Publishing Co., 1990.
Smith y Skouse han señalado:

"Some leases are simple rental agreements, while others closely resemble a debt-financed purchase of property...

There are two primary advantages to the lessee of leasing over purchasing:

No down payment

Avoids risks of ownership (pág. 924)".

El Tribunal Supremo de Puerto Rico ha expresado que el contrato entre el usuario y la entidad financiera adquiere diferentes formas. Meyers Bros. v. Gelco, 114 D.P.R. 116 (1983). Puede ser mobiliario o inmobiliario, financiero u operativo.
El contrato de arrendamiento financiero es, en esencia, una nueva forma de financiamiento. Id. El mismo se particulariza por ser un negocio jurídico cuyo contenido está formado por varias declaraciones de voluntad, las cuales producen una relación jurídica y establecen los términos que la regulan. CNA Casualty de Puerto Rico v. Torres Díaz, 141 D.P.R. 47 (1996). Esta relación contractual es generalmente una tripartita, en donde el arrendador es un intermediario financiero entre el proveedor y el «usuario, a .diferencia del arrendamiento operativo en donde el propio fabricante o suplidor es quien financia. Meyers Bros. v. Gelco, supra, a la pág. 120.
En Class Downing v. Vehicle Equmnt. Leasing Co., 143 D.P.R. _ (1997), 97 J.T.S. 70, el Tribunal Supremo de Puerto Rico expresó:

"A tales efectos, el arrendamiento financiero es una modalidad del arrendamiento. En el arrendamiento financiero, el pago inicial es mínimo, se pacta el uso del bien y no equivale a una transmisión definitiva de la propiedad al expirar el contrato, puesto que en el arrendamiento financiero se presentan una serie de alternativas. No puede presumirse que el arrendatario tuviera voluntad de comprar al suscribir el contrato, puesto que esa voluntad suele formarse al concluir la operación desarriendo,- en aquellos casos en que el arrendatario decide pagar el valor residual pactado en el contrato. Ademásen el contrato de arrendamiento financiero, la entrega del bien en caso de incumplimiento no compensa adecuadamente al arrendador su propio riesgo e inversión."

Este contrato no puede equipararse al arrendamiento puro, ni al arrendamiento-venta, ni al depósito, ni al préstamo, ni a la estipulación a favor de tercero, ni a otras figuras familiares afines, aunque a veces comparta características semejantes. Id., a la pág. 121. Véase, también, Class Downing v. V.E.L.C.O., 97 J.T.S. 70.
El Tribunal Supremo, al enfrentarse a esta nueva realidad contractual, expresó que el mismo es "un contrato atípico, sui generis, producto de la realidad cambiante del tráfico mercantil". Meyers Bros. v. Gelco, supra.
Por otro lado, la Ley Núm. 76 de 13 de agosto de 1994, conocida- como, "Ley para Reglamentar los Contratos de Arrendamiento de Bienes Muebles", 10 L.P.R.A. see. 2401, et seq. dispone, en su Art. 2:

*922
"Esta Ley se crea con el propósito de regular el arrendamiento de los bienes muebles en Puerto Rico. La misma le confiere unas salvaguardas a los arrendatarios y unas garantías a los arrendadores. Al proveerle seguridad a ambas partes en la celebración de los contratos de arrendamiento, se estimula la celebración de los contratos de arrendamiento, se estimula la celebración de estos contratos y, a la vez, se logra un crecimiento económico."

A su vez, el Art. 1, 10 L.P.R.A. sec. 2401, define los siguientes términos:

"(a) Arrendador- Significa aquella persona o entidad que se dedica al negocio de arrendamiento y que sea dueña de un bien mueble que le cede a un arrendatario, el derecho al uso y disfrute del mismo mediante un arrendamiento.

(b) Arrendamiento- Significa aquel acuerdo contractual entre el arrendador y el arrendatario en que se cede al arrendatario el derecho al uso y disfrute de un bien específico propiedad del arrendador, por un término específico a cambio de unos pagos periódicos y estipulados anteriormente.

(c) Arrendamiento Financiero- Significa aquél que bajo el contrato de arrendamiento cumpla con uno de los siguientes requisitos:

(1) Si en el contrato de arrendamiento se transfiere la titularidad de la propiedad al arrendatario al finalizar el término del arrendamiento.

(2) Si el contrato de arrendamiento contiene una opción de compra a un valor sustancialmente menor que el justo valor en el mercado al momento de ejercerse la opción.

(3) Si el término del contrato de arrendamiento es igual o mayor al setenta y cinco por ciento (75%) de la vida útil del bien arrendado.

(4) Si el valor presente de los pagos mínimos en el contrato de arrendamiento, excluyendo gastos administrativos, es igual o mayor que el noventa por ciento (90%) del justo valor en el mercado del bien arrendado.

(d) Arrendamiento financiero abierto- Significa aquel arrendamiento en que se establece un valor residual, del cual el arrendatario es responable.

(e) Arrendamiento cerrado- Significa aquel arrendamiento en el cual el arrendatario no tiene ninguna responsabilidad al finalizar el término de arrendamiento, excepto en aquella medida en que se menoscaba el interés del arrendador.

(f) Arrendamiento operativo- Significa todo aquel arrendamiento que no cumpla con los requisitos del arrendamiento financiero según definido en este capítulo.

(g) Arrendamiento de consumo- Aquel arrendamiento concedido a personas naturales primordialmente para fines personales o familiares cuyo costo del bien mueble no exceda los sesenta mil dólares ($60,000).

(h) Arrendatario- Significa aquella persona que adquiere del arrendador el derecho al uso y disfrute de un bien mueble mediante un arrendamiento.

Como podemos colegir de lo anterior, el arrendamiento financiero es una de las modalidades del arrendamiento.
*923 VI
Examinemos los hechos relevantes en el caso de autos bajo el crisol de la normativa antes reseñada.
Auto Outlet nos plantea que el D.A.C.O. incidió al concluir que los términos "arrendamiento financiero" y "alquiler" eran equivalentes al aplicar lo dispuesto en el Art. 27 del Reglamento de Garantías de Vehículos de Motor del D.A.C.O., en adelante, Reglamento, a la situación de autos.
El Art. 27 del Reglamento dispone, en lo pertinente:

"QUE TODO VENDEDOR DE VEHICULO DE MOTOR USADO DEBERA OPRECER AL CONSUMIDOR:

27.1- Todo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa, ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleva un uso irregular o excesivo." (Enfasis suplido)
En la Resolución en Reconsideración, el D.A.C.O. indica, en lo referente:

En primer lugar, cabe señalar que en Vélez v. San Miguel, 68 D.P.R. 575 (1964), nuestro Tribunal Supremo se refirió al alquiler como el canon o cánones que se pagan mensualmente por el arrendamiento de una cosa.

Mientras que la propia Ley para Reglamentar los Contratos de Arrendamiento de Bienes Muebles define el arrendamiento como "el acuerdo contractual entre el arrendador-.^ el arrendatario . en [sic] se cede al arrendatario el derecho al uso y disfrute de un bien específico propiedad del arrendador, por un término específico a cambio de unos pagos periódicos y estipulados anteriormente". Véase Ley Número 76 de 13 de agosto de 1994, según enmendada.

Según se puede observar y muy al contrario al señalamiento del Banco los términos arrendamiento y alquiler no son mutuamente excluyentes. A tal punto que el vocablo arrendamiento está contenido dentro de la definición de alquiler.

Ahora bien, como señala el Banco, el arrendamiento financiero no está clasificado como tal por el mencionado Reglamento. No obstante lo anterior no podemos limitar nuestro análisis cuando es conocido que existen diferentes tipos de arrendamiento financiero; como, por ejemplo, el . cerrado que no impone responsabilidad alguna al arrendatario una vez finalizado y por el cual este [sic] Ultimo (sicj le de un uso excesivo al vehículo.

En el caso de autos, Auto Outlet alega que D.A.C.O. cometió error manifiesto al interpretar que la frase "vehículo de... alquiler ... o [usado para] cualquier otra finalidad que conlleve un uso irregular o excesivo" incluye a los vehículos usados que hayan pertenecido a una empresa, como en el caso de autos, Oriental Leasing, en donde se financia un vehículo permitiéndole a una persona poseer el mismo a cambio de un importe por una larga cantidad de tiempo. Auto Outlet sostiene que este tipo de contrato es sólo un mecanismo de financiamienío de vehículos de motor. Aduce que no se trata propiamente de un vehículo de alquiler como serían los vehículos de ciertas empresas que alquilan sus vehículos por períodos cortos de tiempo y los cuales no son cuidados por los arrendatarios como si fueran de su propiedad. Plantea que el hecho de que bajo el contrato de arrendamiento financiero o "leasing", el poseedor del vehículo tenga la opción de hacerlo suyo al *924 finalizar el contrato, lo deja fuera del concepto de vehículo de alquiler. Este argumento no nos persuade.
Este Tribunal, en ocasiones anteriores, ha evaluado tesis similares, señalando:

"No es correcto presumir que sólo las personas que alquilan un vehículo a corto plazo no lo cuidan como si fuera suyo. No todas las personas que adquieren el uso de un vehículo bajo un contrato de arrendamiento financiero o 'leasing' cuidan el vehículo como si fuera de su propiedad. Aun cuando adquirirlos para sí al vencimiento del contrato, es una opción que tiene tal arrendatario, la realidad es que no deja de ser eso, una opción, pues no existe una obligación de adquirirlos. Además, al ejercer la opción, el arrendatario tiene que pagar un precio por el valor residual del vehículo, el cual puede ser en ocasiones el valor en el mercado, dependiendo de las condiciones en que se encuentre y haya sido cuidado el vehículo.

No es menester elaborar demasiado para entender que 'cuidar' un vehículo no tiene el mismo significado para el arrendatario que tiene la intención de hacerlo suyo al finalizar el contrato, que para aquél que sabe de antemano que optará por entregar el usado y tomar otro nuevo. La aplicación del Reglamento de Garantías de Vehículos de Motor no puede depender del factor millaje, pues el mismo no siempre es indicativo de un uso regular o normal. El cuido de un automóvil se refleja, más que en el millaje recorrido, en el mantenimiento óptimo de sus condiciones mecánicas y su apariencia (e.g., lubricación y cambios de fluidos y filtros siguiendo el itinerario del fabricante, rotación de neumáticos, alineamiento del tren delantero, mantenimiento al sistema de enfriamiento y de frenos, ajustes a correas y, también importante, mantenimiento de la carrocería y pintura exterior). No es, pues, tan sencillo decir que los poseedores de un automóvil bajo un contrato de arrendamiento financiero o 'leasing' a largo plazo, cuidan el vehículo mejor de lo que lo cuidan los arrendadores a corto plazo o como si fuera de su propiedad."

Con su argumentación, Auto Outlet no pretende otra cosa que hacer una distinción tajante entre un vehículo de alquiler de uno sometido a un contrato de arrendamiento financiero o "leasing"; en otras palabras, distinguir lo que el reglamento no distingue. El término arrendamiento está inmerso dentro del término alquiler. Un análisis de la definición de los términos vehículo de alquiler y vehículo de arrendamiento financiero confirman de manera meridiana esta aseveración. Argüir lo contrario llevaría a concluir, en otros extremos, de manera inconsistente que el Reglamento no le aplica a los otros tipos de arrendamiento, como el abierto o el cerrado, toda vez que no están definidos en el mismo.
El Art. 27 del Reglamento, supra, se refiere a vehículos de alquiler y no exime de su aplicación a los vehículos dados en alquiler por cánones mensuales equivalentes a la amortización de su costo, con la opción de que los arrendatarios puedan adquirirlos (de las compañías de "leasing") al vencerse el contrato. Tales vehículos de motor, cuyos verdaderos titulares son estas compañías de "leasing", no dejan de ser vehículos alquilados sólo porque estén sometidos a un contrato de arrendamiento financiero o "leasing". Donde los estatutos o reglamentos no distinguen, los tribunales no debemos distinguir. Véase, Brewer P.R. Inc. v. Tribunal Superior, 93 D.P.R. 242, 243-44 (1966); Rodríguez Rodríguez v. Gobernador, 91 D.P.R. 101, 106-07 (1964).
En relación al segundo error planteado, D.A.C.O. entendió que hubo dolo que vició el consentimiento prestado por los querellantes. Del récord surge que Auto Outlet guardó silencio sobre la situación previa del vehículo, que había sido uno de arrendamiento; más aún, le informaron a los querellantes, a pregunta de éstos, que el millaje extenso había sido por el mucho uso de que la esposa del gerente del "dealer", dueña anterior le había dado. No fue hasta siete (7) meses más tarde y por gestiones propias de los querellantes, al momento de adquirir su licencia del D.T.O.P., que conocieron la situación. Esta omisión de Auto Outlet fue una voluntaria y consciente en su deber de informar al comprador las verdaderas características del vehículo.
Aunque Auto Outlet alegó que el vehículo había sido comprado para uso personal, pero financiado por Oriental Leasing, se desprende de la Resolución recurrida que no pudo evidenciar este particular, aun cuando tenía accesibilidad a cualquier documento que así lo acreditara, pues era la esposa del gerente de Auto Outlet quien se alegaba había sido la dueña anterior del vehículo. Dicho gerente aún trabaja para la compañía y *925 compareció a la vista.
Sin embargo, ante este Tribunal acompañaron documentos acreditativos de lo anterior que no surge de las Resoluciones del D.A.C.O. que fueran presentados ante dicha agencia. Sobre el particular, le recordamos a Auto Outlet que el apéndice del recurso "sólo contendrá copias de documentos que formen parte del expediente original ante el foro administrativo". (Regla 59 E (2) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 59.) A tales efectos, todo lo planteado por Auto Outlet sobre el particular, no será considerado por este Tribunal, ya que está basado sobre evidencia que no fue presentada originalmente ante el foro administrativo. Cf. Garaje Rubén v. Tribunal Superior, 101 D.P.R. 236 (1973); Torres Ortiz v. Plá, 123 D.P.R. 637 (1989).
Reiteramos que en el momento del contrato no se le informó a los querellantes que el vehículo había sido uno de arrendamiento, privando, de esta manera, a los querellante; de tener un conocimiento completo de todos los elementos relacionados al objeto y emitir un consentimiento informado.
En cuanto a los demás errores planteados, no les asiste la razón a Auto Outlet. Cabe indicar que los querellantes presentaron una querella enmendada solicitando daños. Por otro lado, como hemos visto, es responsabilidad del vendedor del vehículo de motor de informar al prospecto comprador si el vehículo a ser adquirido ha sido utilizado para uno o varios de los propósitos enumerados en el Art. 27, supra. La falta de información sobre este hecho constituye base suficiente para solicitar varios remedios a favor del comprador afectado, desde una reducción en el precio de la transacción hasta la rescisión del contrato de compraventa, por ser una información esencial para el comprador que de haber sido conocida por éste, no llevaría a cabo dicha transacción. En el caso de autos se concedió la rescisión del contrato.
Por otro lado, si bien es cierto que la suma otorgada por D.A.C.O. corresponde a los gastos incurridos por los querellantes en reparar los defectos mecánicos y aquellos otros gastos incurridos, habiéndose declarado la nulidad del contrato de compraventa entre las partes por dolo, Auto Outlet viene obligada'a resarcir todos los daños que esa contratación le hubiese irrogado a los querellantes. El gasto en las reparaciones del vehículo de motor es la medida de una parte de los daños, la parte que el D.A.C.O. ordenó compensar.
Por ultimo, la revisión judicial en el campo administrativo es limitada. Según la doctrina establecida por el Tribunal Supremo de Puerto Rico, las decisiones de los organismos administrativos especializados han de recibir deferencia por parte de los tribunales, presumiéndose su corrección.
La revisión en estos casos se circunscribe a determinar si la agencia actúo arbitraria, ilegalmente, o de manera tan irrazonable que su actuación constitúyó un abuso de discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R._(1999), 99 J.T.S. 152, a la pág. 125; Franco Dominicci v. Departamento de Educación, 148 D.P.R._(1999), 99 J.T.S. 108, a la pág. 1,250; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 146 D.P.R._(1998), 98 J.T.S. 79, a la pág. 1,161; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R._(1997), 97 J.T.S. 58, a la pág. 959; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Por el contrario, si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con las mismas. Costa Wood v. Caguas Expressway Motors, Inc., 149 D.P.R. _ (2000), 2000 J.T.S. 11, a la pág. 489; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 98 J.T.S. 79, a las págs. 1,160-61; Comisionado de Seguros dé Puerto Rico v. Antilles Insurance Company, 145 D.P.R._(1998), 98 J.T.S. 38, a la pág. 764; Rivera Rentas v. A & C Development Corp., 144 D.P.R._(1997), 97 J.T.S. 143, a la pág. 344.
La intervención judicial en estos casos, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. 3 L.P.R.A. see. 2175; *926 Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 151 D.P.R._(2000), 2000 J.T.S. 98, a la pág. 1,266; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 98 J.T.S. 79, a la pág. 1,159; Rivera Rentas v. A.&C Development Corp., 97 J.T.S. 143, a la pág. 344.
La norma reiterada es que los tribunales no deben intervenir con las determinaciones de hechos formuladas por una agencia administrativa si están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 150 D.P.R. _ (2000), 2000 J.T.S. 21, a las págs. 560-61; Domínguez Talavera v. Caguas Expressway Motors, 99 J.T.S. 85, a las págs. 1,067-68; T-JAC, Inc. (Wal-mart Caguas) v. Caguas Centrum Limited Partnership, S.E., 148 D.P.R._(1999), 99 J.T.S. 60, a la pág. 894; Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., 144 D.P.R._(1997), 97 J.T.S. 142, a la pág. 332.
La evidencia sustancial para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 2000 J.T.S. 21, a la pág. 561; Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., 97 J.T. S. 142, a las págs. 332-333; Hilton Hotels International v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
VII
Por los fundamentos expresados anteriormente, denegamos la expedición del auto solicitado.
El Juez Ortiz Carrión disiente sin opinión escrita.
Así lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 45
1. Cabe indicar que el recurso presentado no incluye copia de la Moción de Reconsideración presentada por Banco Bilbao Vizcaya, ni del escrito presentado por los querellantes. La ausencia de estas mociones, sin embargo, no son óbice para resolver la controversia ante nos.
2. KLRA-96-00290 - Jueces Sánchez Martínez, Braco Oliveras y Urgell Cuebas.